Rebecca YUMUL, individually, and on behalf of all others similarly situated, Plaintiff,

v.

**SMART BALANCE, INC., Defendant.**

**Case No. CV 10–00927 MMM (AJWx).**

United States District Court, C.D. California.

May 24, 2010.

---

———

Gregory S. Weston, John Joseph Fitzgerald, IV, The Weston Firm, San Diego, CA, Jared H. Beck, Elizabeth Lee Beck, Beck & Lee Business Trial Lawyers, Miami, FL, for Plaintiff.

Rick L. Shackelford of Greenberg Traurig, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

MARGARET M. MORROW, District Judge.

### I. BACKGROUND

Rebecca Yumul filed this putative class action against defendant Smart Balance, Inc. ("Smart Balance") on February 8, 2010.[1] Yumul's complaint alleges that she purchased Nucoa margarine, a product manufactured by Smart Balance, repeatedly during the class period, from January 1, 2000 until the present.[2]

Yumul alleges that Nucoa contains artificial trans fat, which raises the risk of coronary heart disease by raising the level of "bad" LDL blood cholesterol and lowering the level of "good" HDL blood cholesterol.[3] Yumul also alleges that trans fat causes cancer and type 2 diabetes.[4] Despite the ill effects of trans fat, Smart Balance markets Nucoa as "cholesterol free." Yumul alleges that while possibly true, this statement is misleading, since consumption of Nucoa in fact raises the level of LDL blood cholesterol.[5] Yumul contends that use on the product packaging of the word "healthy," (in Spanish, "saludable") is also misleading because of the negative health effects of trans fat.[6]

Yumul asserts that any statute of limitations that might otherwise bar the action must be tolled because Smart Balance "affirmatively conceal[ed] and publically misrepresent[ed] its violations of law" on the product packaging. Yumul alleges that "[a] reasonable consumer would have relied on the deceptive and false claims on the packaging of Nucoa margarine, and through the exercise of reasonable diligence would not have discovered the violations alleged ... because SBI actively and purposefully concealed the truth."[7]

Yumul pleads three causes of action: (1) violation of California's unfair competition law ("UCL"), California Business & Professions Code §§ 17200 et seq.; (2) violation of California's false advertising law ("FAL"), California Business & Professions Code §§ 17500 et seq.; and (3) violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 et seq.

---

1. Complaint for Violations of Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act ("Complaint"), Docket No. 1 (Feb. 8, 2010).

2. *Id.,* ¶ 3.

3. *Id.,* ¶¶ 4–5.

4. *Id.,* ¶ 6. Much of the complaint contains a recitation of scientific research establishing that trans fat causes adverse physical health effects. (*Id.,* ¶¶ 16–57.)

5. *Id.,* ¶ 8. See also *id.,* ¶ 60 ("SBI's 'cholesterol free' claims further insinuate that consumption of Nucoa margarine is useful for the maintenance of healthy serum cholesterol levels when in fact the consumption of SBI's *trans*-fat laden Nucoa margarine negatively impacts serum cholesterol levels. SBI thus deceives consumers concerned about cardiovascular health into purchasing a product harmful to their hearts").

6. *Id.,* ¶ 62.

7. *Id.,* ¶ 74.

Yumul seeks (1) an injunction requiring Smart Balance to cease its misleading advertising practices; (2) a mandatory injunction requiring Smart Balance to conduct a corrective advertising campaign; (3) restitution of the amount by which Smart Balance has been unjustly enriched by its false advertising; and (4) a mandatory injunction requiring that Smart Balance destroy all misleading and deceptive materials and products.

## II. DISCUSSION

### A. Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir.1988). In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990).

The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336, 337–38 (9th Cir.1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir.1995). It need not, however, accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations. See *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("[B]are assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements' of a con-

stitutional discrimination claim" are not entitled to an assumption of truth, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); see also *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir.2009) ("Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation").

To survive a motion to dismiss, plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. See also *id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.... Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief," ' " quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955); *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)). See also, e.g., *Moss*, 572 F.3d at 969 ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reason-

able inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly* ).

## B. Legal Standard Governing Rule 9(b) Pleading Requirements

Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED.R.CIV. PROC. 9(b); see also 5A Charles A. Wright & Arthur W. Miller, FEDERAL PRACTICE AND PROCEDURE § 1297 (2006) ("[Rule 9(b) ] is a special pleading requirement [that is] contrary to the general approach of the 'short and plain,' simplified pleading adopted by the federal rules . . ."). "To avoid dismissal for inadequacy under Rule 9(b)," a "complaint [must] 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.' " *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir.2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir.1989), and *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986)); see also *In re GlenFed Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir.1994) (en banc). Conclusory allegations are insufficient, and the facts constituting the fraud must be alleged with specificity. See *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.1989) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer to the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient" (citation omitted)); see also *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997) (to satisfy Rule 9(b), "the complaint [must] identif[y] the circumstances of the alleged fraud so that defendants can prepare an adequate answer" (internal quotation marks omitted)).

"It is well-settled that the Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.' " *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.2009) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir.2003)). Consequently, the Ninth Circuit has held that Rule 9(b)'s pleading requirements apply to both the CLRA and the UCL:

> "The CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale . . . of goods or services to any consumer.' CAL. CIV. CODE § 1770. The UCL prohibits 'unlawful, unfair or fraudulent business act[s] or practice[s]' and 'unfair, deceptive, untrue or misleading advertising.' CAL. BUS. & PROF.CODE § 17200. Rule 9(b)'s particularity requirement applies to these state-law causes of action. *Vess*, 317 F.3d at 1102–05. In fact, we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL." *Kearns*, 567 F.3d at 1125 (citing *Vess*, 317 F.3d at 1102–05).

The Ninth Circuit conceded that "fraud [was] not a necessary element of a claim under the CLRA and UCL," but noted that when a plaintiff alleges "fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim," then "the claim [can be] said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.* District courts in California have consistently held in addition that claims under California's FAL are grounded in fraud. See,

e.g., *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F.Supp.2d 1112, 1124 (C.D.Cal.2009) ("However, this Court agrees that Plaintiff's false advertising claims are 'grounded in fraud,'" quoting *Vess*, 317 F.3d at 1103–04); *Germain v. J.C. Penney Co.*, No. CV 09–2847 CAS (FMOx), 2009 WL 1971336, *3–4 (C.D.Cal. July 6, 2009) (concluding that false advertising claims are grounded in fraud).

Yumul does not dispute that Rule 9(b) governs the pleading of her claims, as each alleges false advertising and false representations regarding the properties of the Nucoa product.

## C. Whether Plaintiff's First, Second, and Third Claims Meet Rule 9(b)'s Pleading Requirements

■ Smart Balance's motion emphasizes the Ninth Circuit's mandate that, to satisfy the pleading requirements of Rule 9(b), a complaint must plead "'the who, what, when, where, and how' of the misconduct charged," *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)), and further must "set forth what is false or misleading about a statement, and why it is false," *GlenFed*, 42 F.3d at 1548.

■ In *Kearns*, the Ninth Circuit applied these standards to CLRA and UCL claims alleging fraud in the sale of certified pre-owned ("CPO") vehicles. Ford represented that it put the vehicles through a rigorous inspection process in order to certify that their safety, reliability, and road-worthiness surpassed those of non-certified used vehicles. *Kearns*, 567 F.3d at 1122–23. Ford promoted the program through print, broadcast, online, and other media; local dealerships were responsible for the sale and servicing of the vehicles. *Id.* at 1123. Plaintiff asserted that Ford made false and misleading statements concerning the safety and reliability of the vehicles. Specifically, they alleged

that Ford misrepresented the quality of the complete repair and accident-history report, the level of training that inspecting technicians received, and the rigor of the certification process. *Id.* Plaintiff asserted that they were exposed to Ford's representations through its televised national marketing campaign, sales materials at the dealership where they bought their vehicles, and sales personnel working at the dealership. *Id.* at 1125–26. The Ninth Circuit, reviewing the complaint *de novo*, held that the allegations lacked sufficient particularity:

"Kearns fails to allege in any of his complaints the particular circumstances surrounding such representations. Nowhere in the [complaint] does Kearns specify what the television advertisements or other sales material specifically stated. Nor [does] Kearns specify when he was exposed to them or which ones he found material. Kearns also fail[s] to specify which sales material he relied upon in making his decision to buy a CPO vehicle. Kearns does allege that he was specifically told 'CPO vehicles were the best used vehicles available as they were individually hand-picked and rigorously inspected used vehicles with a Ford-backed extended warranty.' Kearns does not, however, specify who made this statement or when this statement was made. Kearns fail[s] to articulate the who, what, when, where, and how of the misconduct alleged. The pleading of these neutral facts fails to give Ford the opportunity to respond to the alleged misconduct. Accordingly, these pleadings do not satisfy the requirement of Rule 9(b) that 'a party must state with particularity the circumstances constituting fraud....' Because Kearns failed to plead his averments of fraud with particularity, we affirm the district court's dismissal of his [complaint]." *Id.* at 1126.

*Kearns* is directly relevant in assessing the adequacy of the complaint in this case. First, much as the plaintiff in *Kearns* failed to allege with specificity when certain fraudulent statements were made, Yumul has failed to allege when during the period from January 1, 2000 to the present she saw or heard the particular representations upon which her complaint is based. Although the complaint alleges that Yumul purchased Nucoa "repeatedly" during the class period, it does not allege with any greater specificity the dates on which the purchases were made. Moreover, the complaint does not allege that Nucoa packaging [8] remained consistent throughout the decade, i.e., that Smart Balance represented that the product contained no cholesterol and was healthy (saludable) during the entire class period. Nor does the complaint allege that each time Yumul purchased the product, she saw one or both representations.

Second, although the plaintiff in *Kearns* identified a particular dealership at which he purchased his vehicle, he also identified three types of media through which Ford communicated the allegedly false representations, i.e., television advertisements, sales materials in the dealership, and oral representations by sales personnel. As a consequence, the Ninth Circuit held that he had not sufficiently alleged how the misrepresentations were communicated to him so as to give Ford an adequate opportunity to respond. Here, Yumul has failed to allege at what retailer or retailers in the state of California she purchased Nucoa.[9] Moreover, because the Nucoa packaging may have changed over the course of ten and a half years, the complaint does not adequately identify the packaging that Yumul saw and on which she relied. Applying the standard set forth in *Kearns*, therefore, the court concludes that Yumul has not alleged with particularity when, where, and how the alleged misrepresentations were communicated.[10]

Consequently, defendant's motion to dismiss each plaintiff's three causes of action

---

**8.** The complaint contains a partial depiction of Nucoa packaging between paragraphs 60 and 61. The pleading contains no allegations, however, stating that the packaging depicted is packaging Yumul saw or relied on in purchasing the product. Nor does it allege when, during the past decade, Smart Balance used the packaging depicted.

**9.** California is the third largest state in terms of area in the United States; it spans 163,696 square miles. Alleging only that the fraud occurred in California does not meet the Ninth Circuit's requirement that plaintiff identify "where" the fraud occurred.

**10.** In *Marolda v. Symantec Corp.,* 672 F.Supp.2d 992 (N.D.Cal.2009), Judge Marilyn Hall Patel of the Northern District of California offered a well-reasoned interpretation of *Kearns* as it applies to omitted information. Although it appears that Yumul alleges affirmative misrepresentations rather than omissions, the court finds Judge Patel's opinion informative in assessing the level of detail necessary to meet Rule 9(b)'s requirements:

"In this case, to plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information. Plaintiff's complaint should also include samples of materials documenting both her 2006 and 2007 purchases that leave out the essential information." *Id.* at 1001.

See also *id.* at 1005 ("[P]laintiff must first identify with some specificity what the allegedly false representations contained, who made them, where, and whether plaintiff had even seen them"). The plaintiff in *Marolda* alleged a precise date on which the product was purchased; as a result, omission of this information was not a subject on which Judge Patel touched.

is granted without prejudice. Plaintiff may replead the claims if she can truthfully allege facts that meet the particularity requirement of Rule 9(b).

### D. Whether Plaintiff's Complaint Should Be Dismissed with Prejudice Because the Packaging Is Not Misleading

■ California courts have held that reasonable reliance is not an element of claims under the UCL, FAL, and CLRA. *In re Tobacco II Cases*, 46 Cal.4th 298, 312, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009) ("'A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief' under the UCL," quoting *Day v. AT & T Corp.*, 63 Cal.App.4th 325, 332, 74 Cal.Rptr.2d 55 (1998) (alteration original)); *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App.4th 798, 801, 66 Cal.Rptr.3d 543 (2007) ("'To state a cause of action under [the CLRA], it is necessary only to show that "members of the public are likely to be deceived." [ ] Allegations of actual deception, reasonable reliance, and damage are unnecessary,'" quoting *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 211, 197 Cal. Rptr. 783, 673 P.2d 660 (1983), in turn quoting *Chern v. Bank of America*, 15 Cal.3d 866, 876, 127 Cal.Rptr. 110, 544 P.2d 1310 (1976));.

Although CLRA claims need not plead reasonable or actual reliance, a CLRA plaintiff must allege that consumers are likely to be deceived under a standard "sometimes called the 'reasonable consumer' standard." *Buckland*, 155 Cal.App.4th at 801, 66 Cal.Rptr.3d 543. Similarly, under the UCL, "[i]n order to obtain a remedy for deceptive advertising, a UCL plaintiff need only establish that members of the public were likely to be deceived by the advertising.... The law focuses on a reasonable consumer who is a member of the target population." *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 130, 103 Cal. Rptr.3d 83 (2009). This standard requires that plaintiffs "show that 'members of the public are likely to be deceived.'" *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) (quoting *Bank of West v. Superior Court*, 2 Cal.4th 1254, 1267, 10 Cal. Rptr.2d 538, 833 P.2d 545 (1992)). The same standard applies under the FAL. See *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 682, 38 Cal.Rptr.3d 36 (2006) ("'To prevail on a false advertising claim, a plaintiff need only show that members of the public are likely to be deceived. A 'reasonable consumer' standard applies when determining whether a given claim is misleading or deceptive. A 'reasonable consumer' is 'the ordinary consumer acting reasonably under the circumstances,' and 'is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture,'" quoting 1A CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES (4th ed. 2004), § 5:17, p. 5–103 (internal citations omitted)).

■ The reasonable consumer standard is similar to the reasonable reliance element of common law fraud. Although reasonableness can, in appropriate circumstances, be decided as a question of law, "California courts ... have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir.2008) (citing *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 134–35, 61 Cal.Rptr.3d 221 (2007)) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence

from both sides' and which usually cannot be made on demurrer," quoting *McKell v. Washington Mutual, Inc.,* 142 Cal.App.4th 1457, 1472, 49 Cal.Rptr.3d 227 (2006)).

The conclusion that a complaint should be dismissed because the reasonable consumer standard could not be met as a matter of law have occasionally been upheld by the Ninth Circuit. In *Freeman,* for instance, the Ninth Circuit affirmed the dismissal of UCL, FAL, and CLRA claims challenging a mailer that suggested plaintiff had won a million dollar sweepstakes. The district court had taken judicial notice of the mailer in question, and the Ninth Circuit relied on the fact that the mailer explicitly stated multiple times that plaintiff would only win the prize if he had the winning sweepstakes number. In *Freeman,* therefore, it was not necessary to evaluate additional evidence to determine whether the advertising was deceptive, since the advertisement itself made it impossible for plaintiff to prove that a reasonable consumer was likely to have been deceived. *Freeman,* 68 F.3d at 289–90. In *Girard v. Toyota Motor Sales, U.S.A., Inc.,* 316 Fed.Appx. 561 (9th Cir. 2008) (Unpub. Disp.), the Ninth Circuit affirmed dismissal in a case where plaintiff alleged that Toyota had failed to make sure consumers received adequate information regarding significant limitations on federal tax credits associated with the purchase of hybrid vehicles. The district court found that a reasonable consumer would not have been misled by Toyota's statements because the two-page advertisements that formed the basis for the complaint included numerous eligibility disclaimers and recommendations to seek professional tax advice. The court concluded that these would have put a reasonable consumer on notice of hybrid tax credit restrictions. *Id.* at 563. In *Williams,* by contrast, the Ninth Circuit reversed the dismissal of UCL, FAL, and CLRA claims. The district court had held

that "no reasonable consumer upon review of the package as a whole would conclude that Snacks contains juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified." *Williams,* 552 F.3d at 940. The Ninth Circuit held that it was improper for the court to conclude, on a motion to dismiss, "that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.*

A handful of recent district court decisions addressing the reasonable consumer standard in the context of allegedly deceptive packaging also warrant analysis. In *Sugawara v. Pepsico, Inc.,* No. 2:08–cv–01335–MCE–JFM, 2009 WL 1439115 (E.D.Cal. May 21, 2009), plaintiff sued the manufacturer of "Cap'n Crunch with Crunchberries" cereal. Plaintiff had believed, as a result of the use of the word "berries," that the cereal contained fruit. In reality, Crunchberries "are pieces of cereal in bright fruit colors, shaped to resemble berries"; "the only fruit content [in the cereal] is a touch of strawberry fruit concentrate, twelfth in order on the ingredient list." *Id.* at *1.

The court noted that, in general, whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss. *Id.* at *3 (quoting *Brockey v. Moore,* 107 Cal.App.4th 86, 100, 131 Cal.Rptr.2d 746 (2003)). It nonetheless found that Crunchberries was one of a "'rare' category of cases in which dismissal is appropriate." *Id.* (quoting *Brockey,* 107 Cal.App.4th at 100, 131 Cal.Rptr.2d 746). The court noted that "while the challenged packaging contains the word 'berries' it does so only in conjunction with the descriptive term 'crunch,'" and further that the court was

"not aware of, nor ha[d] [p]laintiff alleged the existence of, any actual fruit referred to as a 'crunchberry.'" *Id.* Moreover, the court found that the packaging showed that the "crunchberries" were "round, crunchy, brightly-colored cereal balls, and the [packaging] clearly state[d] both that the [p]roduct contains 'sweetened corn & oat cereal' and that the cereal [itself] [was] 'enlarged to show texture.'" *Id.* It concluded, as a result, that no reasonable consumer could be deceived by the packaging.

Similarly, in *McKinnis v. Kellogg USA*, No. CV 07–2611 ABC (RCx), 2007 WL 4766060 (C.D.Cal. Sept. 19, 2007), Judge Audrey Collins considered allegations that "Froot Loops" cereal packaging had misled consumers to believe that the cereal contained fruit. She stated:

"Even taking Plaintiffs' allegations as true, as the Court is required to do, Plaintiffs have failed to state any claim. First, the product's name is spelled F–R–O–O–T, and while this might be a fanciful take on the word F–R–U–I–T, it appears in the trademarked name of the cereal, not on its own or as a description of the actual ingredients of the cereal itself. No reasonable consumer would view the trademark 'FROOT LOOPS' name as describing the ingredients of the cereal. Second, Plaintiffs' allegation that the cereal pieces themselves resemble fruit is not rational, let alone reasonable. The cereal pieces are brightly colored rings, which in no way resemble any currently known fruit. As a matter of law, no reasonable consumer would view them as depicting any fruit. Third, the small 'vignettes' of fruit surrounding the 'NATURAL FRUIT FLAVORS'

banner could not mislead the reasonable consumer. For one, the depiction of fruit on a product label is not a specific affirmation that a product[ ] contains any fruit at all. FDA regulations permit illustrations of fruit on product labels to indicate that product's 'characterizing flavor,' even where the product contains no ingredients derived from the depicted fruit. See 21 C.F.R. § 101.22(i)(*l*) (i-iii). Froot Loops contains the 'NATURAL FRUIT FLAVORS' of lime, orange, lemon, cherry, raspberry, and blueberry, as disclosed in the ingredients panel, rendering any depiction of fruit 'vignettes' on the box entirely accurate and permissible under FDA regulations." *Id.* at *4.[11]

In arguing that no reasonable consumer could be misled by its packaging as a matter of law, Smart Balance relies principally on *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07–02034–RGK (JCx), 2007 WL 4766525 (C.D.Cal. Sept. 4, 2007). There, Judge Gary Klausner considered the packaging of the Sunny Delight line of beverages. Each of beverages used fruit-related descriptors, such as "Orange Fused Pineapple" and "Orange Fused Peach"; the packaging included images of real fruit, which plaintiffs asserted falsely implied that the products contained a significant amount of fruit or fruit juice. Plaintiffs also asserted that placement of the products next to fruit drinks in retail establishments created the impression that Sunny Delight was a genuine fruit drink. In reality, Sunny Delight contains 2 % fruit juice or less. *Id.* at *3. Judge Klausner emphasized that nowhere on the label did the words "fruit juice" appear. He

**11.** The court in *Videtto v. Kellogg USA*, No. 2:08–cv–01324–MCE–DAD, 2009 WL 1439086 (E.D.Cal. May 21, 2009), reached a similar result. Plaintiffs in that case made claims identical to those Judge Collins decided in *McKinniss*. The *Videtto* court made factual findings identical to Judge Collins', and found no reason, even considering the Ninth Circuit's intervening decision in *Williams*, to modify Judge Collins' analysis. *Id.* at *3.

also observed that water and high fructose corn syrup were listed on the back label as the most prominent product ingredients, and also that the ingredient list stated·that each product contained 2% or less of concentrated orange, tangerine, apple, lime, or grapefruit juice. *Id.* at *4.

Based on his examination of the label as a whole, Judge Klausner found that no reasonable consumer could have concluded that Sunny Delight "contain[ed] significant quantities of fruit or fruit juice, particularly when the label identifie[d] the product as fruit 'flavored' and indicate[d] the exact fruit content of each product." *Id.* at *4. In particular, Judge Klausner noted that federally mandated nutritional labels "have long been required on food products and are familiar to almost every reasonable consumer," and that "[w]here a consumer can readily and accurately determine the composition and nutritional value of a product (here, by reading the front and back of the label), no reasonable consumer would be misled or deceived by depictions of fruit on a label." *Id.*

Smart Balance notes that the front of the Nucoa package states that the product has "NO CHOLESTEROL" while the back of the package states that

"[o]ur special formula has been designed with you and your family in mind. Nucoa's Real Margarine is great for cooking and baking. Because it's Lactose Free and Cholesterol Free, it's the healthy and delicious way to make your favorite dishes come to life"

It asserts that plaintiff has not articulated why a reasonable consumer, reading this information, would conclude that the prod-

uct contains no trans fat. Smart Balance also notes that the nutritional label states: "Trans Fat/Grasas Trans 1.5g."

Smart Balance's last point runs afoul of the Ninth Circuit's decision in *Williams.* There, defendant advanced an argument identical to the one that Sunny Delight made before Judge Klausner and that Smart Balance makes here—i.e., that the federally regulated nutritional label revealed the truth of the product's contents. The court stated:

"We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Williams,* 552 F.3d at 939.[12]

In a footnote, the Ninth Circuit noted that, "standing on its own," the statement that the product was "nutritious" "could arguably constitute puffery, since nutritiousness can be difficult to measure concretely." *Id.* at n. 3. As a result, it emphasized that it relied on this statement

---

**12.** There are some distinctions between Judge Klausner's decision in *McKinniss* and that in *Williams.* In *Williams,* the Ninth Circuit emphasized that the product was called "Fruit Juice Snacks," and that the package represented that product was made with "fruit juice and other all natural ingredients."

*Williams,* 552 F.3d at 939. The Ninth Circuit concluded that another statement that the product was "just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy" added to the potential deception. *Id.*

only to the extent that it added to the "deceptive context of the packaging as a whole." *Id.* The court cannot distinguish the reference to "nutritious" in *Williams* from the statement on Nucoa's packaging that the product is "healthy." Like nutritiousness, healthiness is difficult, if not impossible, to measure concretely. Certainly, Yumul has offered no method of measuring the healthiness of a particular product. The reference to "healthy," therefore, can only provide context in assessing whether the other statement on the packaging is misleading. The court must determine, therefore, given *Williams,* whether the "no cholesterol" statement could lead a reasonable consumer to conclude that the product contained no trans fat, i.e., that it would not increase LDL blood cholesterol levels.

 *Williams* stands for the proposition that where product packaging contains an affirmative misrepresentation, the manufacturer cannot rely on the small-print nutritional label to contradict and cure that misrepresentation. It is not clear whether or not a statement that a product contains no cholesterol would cause a reasonable consumer to conclude

that the product does not increase LDL blood cholesterol levels.[13] Viewing the facts in the light most favorable to plaintiff, however, the court cannot find that this case presents "the rare situation in which granting a motion to dismiss is appropriate." *Williams,* 552 F.3d at 939.[14] Rather, the court concludes that "the parties should be able to submit evidence to demonstrate whether a reasonable consumer would find the labeling on the subject [product] to be deceptive." *Hitt v. Arizona Beverage Co., LLC,* No. 08cv809 WQH (POR), 2009 WL 449190, *7 (S.D.Cal. Feb. 4, 2009). The Nucoa packaging does not make it "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams,* 552 F.3d at 939. As a consequence, it is appropriate to permit plaintiff to attempt to "demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers." *Heighley v. J.C. Penney Life Insurance Co.,* 257 F.Supp.2d 1241, 1260 (C.D.Cal.2003).

For this reason, although the court dismisses Yumul's complaint without prejudice for failure to plead fraud with particu-

---

**13.** At oral argument, defense counsel asserted that in order for plaintiff to succeed, she would have to show a link between the statement on the package that the product was "cholesterol free" and the statement that it contained "no trans fat." This would be one way for plaintiff to prevail on her claims. Plaintiff could also, however, show that a reasonable consumer would have read the reference to "cholesterol free" in the context of the statement on the back of the packaging that linked the fact that the product was cholesterol free to its being "healthy," and have concluded that the product would not raise cholesterol levels. The court cannot conclude based on the packaging alone that the latter reading is so unreasonable that the case can be resolved on a motion to dismiss.

**14.** At the hearing, defense counsel attempted to distinguish *Williams,* asserting that the

court there was concerned with a class of consumers who were "especially susceptible" to false advertising, i.e., children. This characterization is not supported by the text of the opinion. At no point did the Ninth Circuit denominate children the relevant consumer group; in fact, it defined the class of consumers involved as the *"parents* of small children." *Williams,* 552 F.3d at 936 (emphasis supplied). The Ninth Circuit also quoted a California decision stating that "unless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer." The fact that the court proceeded to apply the reasonable consumer standard indicates that it did *not* believe that *Williams* involved a particularly vulnerable or disadvantaged group. *Id.* at 938 (quoting *Lavie v. Procter & Gamble Co.,* 105 Cal.App.4th 496, 506–07, 129 Cal.Rptr.2d 486 (2003)).

larity as required by Rule 9(b), it declines to dismiss the complaint with prejudice based on a finding that the packaging is not misleading as a matter of law.

### E. Whether Plaintiff's Complaint Should Be Dismissed Because It Is Based on Conduct Outside the Applicable Limitations Period

Yumul alleges a class period commencing January 1, 2000 and continuing to the present. CLRA and FAL claims are subject to a three-year statute of limitations and UCL claims are subject to a four-year statute of limitations. CAL. CIV.CODE § 1783 (setting a three-year statute of limitations for actions under the CLRA); CAL. BUS. & PROF.CODE § 17208 (setting a four-year statute of limitations for actions under the UCL); CAL. C.C.P. § 338(a) (providing a default three-year statute of limitations for actions created by statute); *County of Fresno v. Lehman*, 229 Cal. App.3d 340, 346, 280 Cal.Rptr. 310 (1991) (applying the three-year statute in § 338 to an FAL claim).

██ "In a federal diversity action based on alleged violations of state law, the state statute of limitations controls." *Adams v. I–Flow Corp.*, No. CV09–09550 R(SSx), 2010 WL 1339948, *3 (C.D.Cal. Mar. 30, 2010) (citing *Bancorp Leasing and Financial Corp. v. Agusta Aviation Corp.*, 813 F.2d 272, 274 (9th Cir.1987)). As noted, plaintiff's complaint contains the following allegation regarding the tolling of the respective statutes of limitations:

> "SBI has tolled any applicable statute of limitations by affirmatively concealing and publically misrepresenting its violations of law [on the packaging itself]. A reasonable consumer would have relied on the deceptive and false claims on the packaging of Nucoa margarine, and through the exercise of reasonable dili-

gence would not have discovered the violations alleged herein because SBI actively and purposefully concealed the truth." [15]

Smart Balance argues that this allegation is factually insufficient to support tolling of the statute of limitations. It asserts that Yumul must allege sufficient facts to invoke either the delayed discovery or fraudulent concealment rules.

██ "In order to invoke [the delayed discovery exception] to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *In re Conseco Insurance Co. Annuity Marketing & Sales Practices Litigation*, No. C–05–04726 RMW, 2008 WL 4544441, *8 (N.D.Cal. Sept. 30, 2008) (quoting *Saliter v. Pierce Bros. Mortuaries*, 81 Cal.App.3d 292, 296, 146 Cal.Rptr. 271 (1978)). See also *E–Fab, Inc. v. Accountants, Inc. Services*, 153 Cal.App.4th 1308, 1319, 64 Cal.Rptr.3d 9 (2007) ("A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer," quoting *McKelvey v. Boeing North American, Inc.*, 74 Cal.App.4th 151, 160, 86 Cal. Rptr.2d 645 (1999)). See also *Keilholtz v. Lennox Hearth Products Inc.*, No. C 08–00836 CW, 2009 WL 2905960, *3 (N.D.Cal. Sept. 8, 2009) ("To invoke the delayed discovery rule, the plaintiff must plead facts showing: '(a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an

---

15. Complaint, ¶ 71.

earlier date). (c) How and when he did actually discover the fraud or mistake,'" quoting *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir.1991)). As the *McKelvey* court recognized, this rule applies even where plaintiff is prosecuting a class action. See *McKelvey*, 74 Cal.App.4th at 160–61, 86 Cal.Rptr.2d 645 (applying the standard to a class action).

■ Yumul has not alleged the time and manner of her discovery of the facts giving rise to her claims, nor does she argue that the delayed discovery doctrine provides a basis for tolling the statute of limitations in her opposition brief. The court therefore concludes that the complaint does not plead sufficient facts to invoke the delayed discovery rule.[16]

■ It appears, in fact, that Yumul seeks to toll the statute of limitations under the doctrine of fraudulent concealment. "[W]hen the defendant is guilty of fraudulent concealment of the cause of action the statute [of limitations] is deemed not to become operative until the aggrieved party discovers the existence of the cause of action." *Unruh–Haxton v. Regents of University of California*, 162 Cal.App.4th 343, 367, 76 Cal.Rptr.3d 146 (2008) (quoting *Pashley v. Pacific Elec. Ry. Co.*, 25 Cal.2d 226, 229, 153 P.2d 325 (1944) (alterations original)). "A defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable." *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.4th 623, 637, 54 Cal.Rptr.3d 735, 151 P.3d 1151 (2007).

■ "Absent a fiduciary relationship, nondisclosure is not fraudulent conceal-ment—affirmative deceptive conduct is required." *Long v. Walt Disney Co.*, 116 Cal.App.4th 868, 874, 10 Cal.Rptr.3d 836 (2004). See *Rutledge v. Boston Woven Hose and Rubber Co.*, 576 F.2d 248, 250 (9th Cir.1978) ("Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure"); *Lauter v. Anoufrieva*, 642 F.Supp.2d 1060, 1100 (C.D.Cal.2009) (under California law, "[a] plaintiff alleging fraudulent concealment must establish that his failure to have notice of his claim was the result of the affirmative conduct by the defendant"). See also *Keilholtz*, 2009 WL 2905960 at *5 ("[t]he rule of fraudulent concealment is applicable whenever the defendant intentionally prevents the plaintiff from instituting suit," quoting *Bernson v. Browning–Ferris Indus. of California, Inc.*, 7 Cal.4th 926, 931, 30 Cal.Rptr.2d 440, 873 P.2d 613 (1994)).

■ "When a plaintiff relies on a theory of fraudulent concealment ... to save a cause of action that otherwise appears on its face to be time-barred, he or she must specifically plead facts which, if proved, would support the theory." *Mills v. Forestex Co.*, 108 Cal.App.4th 625, 641, 134 Cal.Rptr.2d 273 (2003). "In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Id.* (quoting *Baker v. Beech Aircraft Corp.*, 39 Cal.App.3d 315, 321, 114 Cal.Rptr. 171 (1974)).

---

**16.** This analysis applies only to Yumul's CLRA and FAL claims. UCL claims "are subject to a four-year statute of limitations which beg[ins] to run on the date the cause of action accrued, not on the date of discovery." *Karl* *Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848, 857 (9th Cir.2002) (citing Cal. Bus. & Prof.Code § 17208).

▮ In a case that, like this one, alleged class claims under the UCL and CLRA, Judge Claudia Wilken of the Northern District of California held:

> "Plaintiffs' [complaint] fails to allege when the fraud was discovered by class members who have time-barred claims, the circumstances under which it was discovered, and that they were not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put them on inquiry. Plaintiffs therefore fail to allege sufficient facts to invoke tolling based on fraudulent concealment." *Keilholtz*, 2009 WL 2905960 at *5.[17]

As a consequence, Judge Wilken held that the class plaintiffs had failed to allege sufficient facts to survive a motion to dismiss and that any claims arising outside the relevant statute of limitations had to be dismissed.[18]

▮ The Ninth Circuit has previously held that a claim that fraudulent concealment tolls an applicable state statute of limitations must be pled with particularity under Rule 9(b) of the Federal Rules of

---

**17.** In *Keilholtz*, plaintiffs sought to represent a class of person who purchased and installed gas fireplaces that defendants represented were "safe, of mercantile quality, and fit for their intended and reasonably foreseeable uses, and [that they had] sufficient protections and warnings regarding potential dangers and hazards [of the type] reasonable consumers would expect and assume to be provided in order to make a decision whether to purchase a home installed with [the fireplace] or purchase [a fireplace]." *Keilholtz*, 2009 WL 2905960 at *1 (third and fourth alterations original). Plaintiffs alleged that defendants failed to disclose or concealed the fact that the fireplaces were "dangerous and unsafe given that the unguarded single pane glass-sealed front may reach temperatures in excess of 475 degrees Fahrenheit, which may cause third degree burns to skin contacting the glass." *Id.* The plaintiffs in *Keilholtz*, like Yumul here, sought to represent a class of persons who in the preceding ten years owned or came to own residential homes with such fireplaces. *Id.*

**18.** Much of Yumul's opposition discusses a dichotomy between self-concealing fraud and affirmative concealment. This distinction is endorsed by federal courts outside this circuit, but has not been adopted by any California state court. See, e.g., *Hobson v. Wilson*, 737 F.2d 1, 33 (D.C.Cir.1984) (recognizing, in a federal constitutional law case, that courts must "distinguish between acts that are self-concealing (such as frauds) and acts where, absent a subsequent act of concealment, only the perpetrator, but not the fact that a cause of action might exist, would be unknown (such as a burglary)"), overruled in part on other grounds, *Leatherman v. Tarrant County*

*Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir.2001) (holding that under the Employee Retirement Income Security Act, to take advantage of the longer six-year statute of limitations for "fraud or concealment," a plaintiff must allege a breach of fiduciary duty and "a 'self-concealing act' [which is] an act committed during the course of the breach that has the effect of concealing the breach from the plaintiff"); *Sheet Metal Workers, Local 19 v. 2300 Group, Inc.*, 949 F.2d 1274, 1280 (3d Cir.1991) (holding that under Pennsylvania's inherent fraud doctrine, a plaintiff who pleads a fraud that is self-concealing by alleging that defendant made a misrepresentation regarding a material fact will be entitled to equitable tolling). Plaintiff cites these and other cases in arguing that SBI's fraud was self-concealing. As already noted, the court is bound in this diversity action to apply the law of California. None of the cases plaintiff cites was decided by a California state court, and the court's independent research suggests that California views an affirmative act of concealment, rather than mere nondisclosure, as a prerequisite to invocation of the fraudulent concealment doctrine. Additionally, even were the California courts to recognize the distinction between affirmative concealment and self-concealing fraud, plaintiff would still be required to plead when the fraud was discovered; the circumstances under which it was discovered; and why she was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put her on inquiry at an earlier stage.

Civil Procedure. *389 Orange Street Partners v. Arnold,* 179 F.3d 656, 662 (9th Cir.1999) (applying Connecticut's law of fraudulent concealment, which is in all material respects identical to California law, and holding that the circumstances constituting the fraud must be pleaded with particularity under Rule 9(b)); *Suckow Borax Mines Consolidated v. Borax Consolidated,* 185 F.2d 196, 209 (9th Cir.1951) (applying California law and holding that a "bare allegation" of fraudulent concealment "is but a conclusion of law which falls far short of the particularity of statement required by Rule 9(b)"); *Collins v. Nationalpoint Loan Services,* No. 09cv1314 JM(CAB), 2009 WL 3213979, *3 (S.D.Cal. Sept. 29, 2009) ("As Plaintiff alleges fraudulent concealment, [Rule] 9(b) requires him to particularly set forth specific allegations demonstrating the tolling of the statute of limitations"); *Juniper Networks v. Shipley,* No. C 09–0696 SB, 2009 WL 1381873, *5 (N.D.Cal. May 14, 2009) (an allegation that a website represented that a firewall was functioning despite knowledge that the statement was untrue was "too vague to comply with the particularity requirements of Rule 9(b)" and allege fraudulent concealment as a basis for tolling the statute of limitations); *Rambus Inc. v. Samsung Electronics Co., Ltd.,* Nos. C–05–02298 RMW, C–05–00334 RMW, 2007 WL 39374, *6 (N.D.Cal. Jan. 4, 2007) ("Nevertheless, because fraud is the underlying theory of the doctrine of fraudulent concealment, the heightened pleading requirements of [Rule] 9(b) applies"); *Deirmenjian v. Deutsche Bank, A.G.,* No. CV 06–00774 MMM, 2006 WL 4749756, *43 (C.D.Cal.2006) (to plead that a statute of limitation is tolled under the doctrine of fraudulent concealment, the plaintiff "must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts"). Consequently, to allege tolling or fraudulent concealment adequately, Yumul must not only plead the facts giving rise to such tolling, but must do so with particularity.

▮ Just as plaintiff failed adequately to plead the substance of her UCL, CLRA, and FAL claims under Rule 9(b), she also failed adequately to allege fraudulent concealment sufficient to establish tolling. Plaintiff has not pled the who, what, when, where, and how of the alleged fraudulent concealment. Furthermore, as in Judge Wilken's case, Yumul has failed to allege when the fraud was discovered, the circumstances under which it was discovered, the circumstances indicating that she was not at fault for failing to discover it earlier, and the fact that she had no actual or constructive knowledge of facts sufficient to put her on inquiry.

Because Yumul has failed to plead facts sufficient to establish tolling under the delayed discovery rule or the fraudulent concealment rule, and further because she has not stated with particularity the basis on which she contends that SBI fraudulently concealed the claims, the court dismisses Yumul's complaint to the extent it alleges conduct occurring outside the relevant statutes of limitations. Yumul may re-plead her tolling theory/theories if she can truthfully allege facts that would support a finding of delayed discovery of the CLRA and FAL claims, or if she can truthfully and with particularity allege facts that would support a finding that SBI fraudulently concealed the existence of the claims.

## III. CONCLUSION

For the reasons stated, the court grants defendant's motion to dismiss plaintiff's first, second, and third causes of action with leave to amend for failure to allege with particularity the facts on which the claims are based. Similarly, the court grants defendant's motion to dismiss the

claims to the extent they allege conduct outside the applicable statutes of limitations for failure to allege facts that would support a finding that the limitations period was tolled due to delayed discovery and for failure to allege with particularity facts that would support a finding that SBI fraudulently concealed the existence of the claims. The court denies defendant's motion to dismiss plaintiff's complaint with prejudice for failure to establish that a reasonable consumer would have been misled by defendant's packaging. Plaintiff may file an amended complaint that complies with this order no later than 21 days from the date of this order.