210 F.3d 1099 (9th Cir. 2000)
 NISSAN FIRE & MARINE INSURANCE COMPANY, LTD; HITACHI DATA SYSTEMS CORP.,Plaintiffs-Appellants,
v.
FRITZ COMPANIES, INC.; TOWER AIR, INC.,Defendants-Appellees.
 No. 98-16024
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted June 17, 1999
Filed April 25, 2000
 
 [Copyrighted Material Omitted]
 COUNSEL: David M. Salentine, San Francisco, California, for the plaintiffs-appellants.
 Stephen L. Bucklin, Countryman & McDaniel, Los Angeles, California, for defendant-appellee Fritz Companies, Inc.
 Frank A. Silane, Kevin R. Sutherland, and Scott D. Cunningham, Condon & Forsyth, Los Angeles, California, for defendant-appellee Tower Air, Inc.
 Appeal from the United States District Court for the Northern District of California; Claudia Wilken, District Judge, Presiding. D.C. No.CV-97-01523-CW
 Before: David R. Thompson and William A. Fletcher, Circuit Judges, and Susan Oki Mollway, District Judge,[1]
 W. FLETCHER, Circuit Judge:
 
 
 1
 Appellants Hitachi Data Systems Corp. ("Hitachi") and its insurer, Nissan Fire & Marine Insurance Co. Ltd. ("Nissan"), sued appellees Fritz Co., Inc. ("Fritz") and Tower Air, Inc. ("Tower") under the Warsaw Convention for recovery of damages arising out of the total loss of goods carried by Fritz and Tower. The district court granted summary judgment for Fritz and Tower, and Hitachi and Nissan appealed. For the reasons that follow, we reverse as to Fritz and affirm as to Tower.
 
 
 2
 * In June 1995, Hitachi contracted with Fritz, a freight forwarder, to ship a 530 kilogram disk drive from Miami to Buenos Aires, Argentina. Pursuant to arrangements made by Fritz, Tower flew the disk drive to Buenos Aires. The parties agree that the disk drive arrived damaged on June 13, 1995, and was thereafter determined to be a total loss. The parties disagree, however, on whether Hitachi provided timely notification of the loss to Fritz and Tower.
 
 
 3
 The timeliness of notice is controlled by the Warsaw Convention, which governs international shipment by air. See Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934), note following 49 U.S.C. S 40105. The United States and Argentina are both signatories to the Convention. See United States Department of State, Treaties in Force 315-16 (1995). Article 26 of the Convention provides that no claim for damages against a carrier may be sustained unless a written complaint concerning the damage was "dispatched" by the shipper within seven days of the receipt of the damaged goods.[2]
 
 
 4
 Fritz and Tower each moved for summary judgment on the ground that Hitachi failed to comply with the Convention's seven-day notice requirement. Fritz supported its motion with an affidavit by its General Manager of Export Services, Kathy O'Brien, stating that Fritz had not received notice within seven days of Hitachi's receipt of the disk drive. Tower submitted affidavits by its Director of Aircraft Planning, Linda Zink, stating that neither Tower nor a Tower agent had received written notice of damage to the disk drive until March 12, 1997, more than two years after it arrived in Buenos Aires. Hitachi and Nissan responded by producing two affidavits from a Nissan claims adjuster and attaching an inspection certificate and letters purporting to constitute timely notice. The district court declined to consider Hitachi and Nissan's documents as evidence and granted summary judgment for Fritz and Tower.
 
 II
 
 5
 The vocabulary used for discussing summary judgments is somewhat abstract. Because either a plaintiff or a defendant can move for summary judgment, we customarily refer to the moving and nonmoving party rather than to plaintiff and defendant. Further, because either plaintiff or defendant can have the ultimate burden of persuasion at trial, we refer to the party with and without the ultimate burden of persuasion at trial rather than to plaintiff and defendant. Finally, we distinguish among the initial burden of production and two kinds of ultimate burdens of persuasion: The initial burden of production refers to the burden of producing evidence, or showing the absence of evidence, on the motion for summary judgment; the ultimate burden of persuasion can refer either to the burden of persuasion on the motion or to the burden of persuasion at trial.
 
 
 6
 A moving party without the ultimate burden of persuasion at trial -usually, but not always, a defendant -has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. See 10A C. Wright, A. Miller and M. Kane, Federal Practice and Procedure S 2727 (3rd ed. 1998). In order to carry its burden of production, the moving party must produce either evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F. 2d 563, 574 (9th Cir. 1990). In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. See id.
 
 
 7
 If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produceanything, even if the nonmoving party would have the ultimate burden of persuasion at trial. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); High Tech Gays, 895 F.2d at 574; A. Friedenthal, A. Miller and M. Kane, Civil Procedure 460 (3rd ed. 1999). In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. See High Tech Gays, 895 F.2d at 574; Clark v. Coats & Clark, Inc., 929 F.2d 604, 607 (11th Cir. 1991). If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. See High Tech Gays, 895 F.2d at 574; Cline v. Industrial Maintenance Eng'g. & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion. See id.
 
 
 8
 In the case before us, plaintiffs Hitachi and Nissan have the ultimate burden of persuasion at trial on the issue of providing timely notice. In their motions for summary judgment, defendants Fritz and Tower were thus moving parties without the ultimate burden of persuasion at trial. As moving parties, Fritz and Tower had both the initial burden of production and the ultimate burden of persuasion on their motions. As nonmoving parties, plaintiffs Hitachi and Nissan had neither the initial burden of production nor the ultimate burden of persuasion on defendants' motions, even though they had the ultimate burden of persuasion at trial.
 
 III
 
 9
 The first question we must decide is whether Fritz and Tower, as the moving parties, carried their initial burden of production, and thus whether Hitachi and Nissan, as the nonmoving parties, had an obligation to produce any evidence in response. The analytic framework is provided by Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986). We recognize that the two cases have caused some confusion in the lower courts, and that some academic commentators consider them to be inconsistent.[3] However, we are constrained to treat the cases as consistent, for the Supreme Court in Celotex explicitly relied upon and distinguished Adickes rather than overruling it. See 477 U.S. at 325.
 
 
 10
 We believe that the perceived tension between Adickes and Celotex may be explained by the fact that the cases focused on different questions. The central question in Adickes was whether the movingparty had carried its initial burden of production by producing affirmative evidence negating an essential element of the nonmoving party's claim. The central question in Celotex was whether the moving party had carried its initial burden of production by showing that the nonmoving party did not have enough evidence to carry its ultimate burden of persuasion at trial. In other words, Adickes and Celotex dealt with the two different methods by which a moving party can carry its initial burden of production.[4]
 
 
 11
 In Adickes, plaintiff was a white school teacher who, with six black students, sat at a table in a restaurant in an S.H. Kress variety store in Hattiesburg, Mississippi, as part of civil rights protest. Adickes was refused service and then, as she left the store, arrested for vagrancy. She brought a civil rights suit against Kress under 42 U.S.C. S 1983, alleging that the store's employees conspired with police to refuse her service because she was a white person " `in the company of Negroes.' " 398 U.S. at 149.
 
 
 12
 Because Kress was a private company, it engaged in state action in violation of S 1983 only if it conspired with Hattiesburg police officers in denying service. As plaintiff, Adickes had the ultimate burden of persuasion at trial to show such a conspiracy. Kress moved for summary judgment on the ground that there was no conspiracy. Kress submitted a deposition of its store manager stating that he had not communicated with the police; an affidavit of the chief of police stating that the store manager had not requested that petitioner be arrested; and identical affidavits of the two arresting officers stating that they had not consulted with the store manager or anyone else prior to the arrest and that "no one at the Kress store asked that the arrest be made." Kress further noted that Adickes was relying on circumstantial evidence to support her contention that there was an arrangement between Kress and the police, and pointed out that Adickes said in her deposition that she had no knowledge of any communication between the store employees and the police.
 
 
 13
 The Supreme Court asked whether Kress, the moving party without the ultimate burden of persuasion at trial, had produced affirmative evidence negating an essential element of Adickes' claim, thereby carrying its initial burden of production. The Court concluded that Kress had not carried its initial burden
 
 
 14
 because of its failure to foreclose the possibility that there was a policeman in the Kress store while [Adickes] was awaiting service, and that this police man reached an understanding with some Kress employee that [Adickes] not be served.
 
 
 15
 It is true that Mr. Powell, the store manager, claimed in his deposition that he had not seen or communicated with a policeman prior to his tacit signal to Miss Baggett, the supervisor of the food counter. But [Kress] did not submit any affidavits from Miss Baggett, or from Miss Freeman, the wait ress, who actually refused [Adickes] service, either of whom might well have seen and communicated with a policeman in the store. Further, we find it par ticularly noteworthy that the two police officers involved in the arrest each failed in his affidavit to foreclose the possibility (1) that he was in the store while petitioner was there; and (2) that, upon seeing petitioner with Negroes, he communicated his disap proval to a Kress employee, thereby influencing the decision not to serve petitioner.
 
 
 16
 Given these unexplained gaps in the materials submitted by [Kress], we conclude that [Kress] failed to fulfill its initial burden of demonstrating what is a critical element in this aspect of the case -that there was no policeman in the store. If a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a "meeting of the minds" and thus reached an understanding that petitioner should be refused service.
 
 
 17
 Id. at 157-58.
 
 
 18
 Under Adickes, a moving party without the ultimate burden of persuasion at trial does not carry its initial burden of production if it fails to produce affirmative evidence negating an essential element of the nonmoving party's claim or defense. 398 U.S. at 158. By providing no affidavits of Baggett and Freeman, and by providing narrow, artfully drafted affidavits of the two policemen, Kress failed to present evidence negating an essential element of Adickes' claim. If Baggett or Freeman had had no communication from the policemen, Kress could have provided their affidavits so stating. Similarly, if the policemen had not been in the store, they could have so stated in their affidavits. "Because [Kress ] did not meet its initial burden of establishing the absence of a policeman in the store, [Adickes] was not required to come forward with suitable opposing affidavits." Id. at 160; see also Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993) ("The party opposing [a motion for summary judgment ] is under no obligation to offer affidavits or any other materials in support of its opposition. Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues."). As the Supreme Court wrote, quoting Professor Moore, " `No defense to an insufficient showing is required.' " Adickes, 398 U.S. at 161 (quoting 6 James Wm. Moore et al., Moore's Federal Practice S 56.22[2] (2d ed. 1966)).
 
 
 19
 In Celotex, plaintiff Catrett brought a wrongful death action arising out of the death of her husband, claiming that he died as a result of exposure to asbestos manufactured by Celotex. After discovery, defendant Celotex moved for summary judgment on the ground that Catrett had no evidence that her husband had been exposed to any Celotex product during the statutory period. In its motion, Celotex pointed out that Catrett had "failed to identify, in answering interrogatories specifically requesting such information, any witnesses who could testify about the decedent's exposure to [Celotex's] asbestos products." 477 U.S. at 320. The Court held that defendant Celotex could meet its initial burden of production "by `showing' -that is, pointing out to the district court -that there is an absence of evidence to support the nonmoving party's case." Id. at 325. It was sufficient, for this purpose, for Celotex to direct the district court's attention to Catrett's answer to interrogatories admitting that she had no witnesses who could testify that her husband had been exposed during the statutory period to asbestos manufactured by Celotex, and to the absence of any other evidence of exposure in the materials compiled during discovery. See id. at 320, 328.
 
 
 20
 We not that Celotex did not hold that a moving party without the ultimate burden of persuasion at trial may use a summary judgment motion as a substitute for discovery. A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence. See Clark, 929 F.2d at 608 ("Even after Celotex it is never enough simply to state that the non-moving party cannot meet its burden at trial."). In a typical case, in order to carry its initial burden of production by pointing to the absence of evidence to support the nonmoving party's claim or defense, the moving party will have made reasonable efforts, using the normal tools of discovery, to discover whether the nonmoving party has enough evidence to carry its burden of persuasion at trial. See id. (noting that a moving party must "point to materials on file which demonstrate that a party will not be able to meet that burden"). Thenonmoving party, of course, must have had sufficient time and opportunity for discovery before a moving party will be permitted to carry its initial burden of production by showing that the nonmoving party has insufficient evidence. See Celotex, 477 U.S. at 326 ("The parties had conducted discovery, and no serious claim can be made that [Catrett] was in any sense `railroaded' by a premature motion for summary judgment. Any potential problem with such premature motions can be adequately dealt with under Rule 56(f), which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery.").
 
 
 21
 Thus, under Adickes and Celotex, a moving party without the ultimate burden of persuasion at trial may carry its initial burden of production by either of two methods. The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. The first method, at issue in Adickes, may be more commonly employed because it is easier in many cases to produce affirmative evidence negating an essential element of the nonmoving party's claim or defense than it is to show that the nonmoving party has insufficient evidence to carry its ultimate burden of persuasion at trial. But this does not mean that the second method, at issue in Celotex, is legally disfavored. The Supreme Court has clearly indicated that, in appropriate cases, a moving party may carry its initial burden of production by showing that the nonmoving party does not have enough evidence to carry its ultimate burden of persuasion at trial.
 
 IV
 
 22
 We conclude that Fritz did not carry its initial burden of production. The Warsaw Convention requires that notice of a claim for damages must be "dispatched" within seven days of the receipt of the goods in question. In support of its motion for summary judgment, Fritz produced an affidavit of Kathy O'Brien, its General Manager of Export Services. The affidavit quoted the following provision from the air waybill issued by Fritz:
 
 
 23
 (10)(a) No action shall be maintained in the case of damage to goods unless a written notice, sufficiently describing the goods concerned, the approximate date of the damage, and the details of the claim, is presented to the issuing Carrier within 7 days from the date of receipt thereof . . . .
 
 
 24
 (emphasis added). The affidavit then stated, "Fritz did not receive written notice containing the information specified in this section from plaintiffs within the seven (7) time period [sic] specified above" (emphasis added).
 
 
 25
 This affidavit produced by the moving party, Fritz, purports to negate an essential element of plaintiffs' claim -timely notice -but it does not actually do so. Under the Warsaw Convention, Hitachi and Nissan must have "dispatched" notice to Fritz within seven days of the receipt of the damaged goods.[5] The O'Brien affidavit produced by Fritz only states that such notice was not "presented " to (or "received" by) Fritz within seven days. Obviously, notice could have been "dispatched" by Hitachi on the seventh day but not "presented" to Fritz until the eighth, ninth, or some later day. In other words, both Hitachi's allegation that it provided timely notice and O'Brien's statement thatFritz received no notice within seven days could well be true.
 
 
 26
 The district court perceived the gap in the O'Brien affidavit, noting that "Fritz failed to present adequate evidence that notice was not timely sent." The district court nonetheless granted defendant Fritz's motion for summary judgment because it believed that plaintiffs Hitachi and Nissan had the ultimate burden of persuasion at trial on the issue of timely notice. In so ruling, the district court confused plaintiffs' obligation at trial and plaintiffs' obligation as a nonmoving party at summary judgment. At trial, a plaintiff must produce evidence in support of its claim in order to carry its ultimate burden of persuasion. But at summary judgment, a nonmoving party plaintiff has no obligation to produce anything until the moving party defendant has carried its initial burden of production. Because the O'Brien affidavit did not carry Fritz's initial burden of production, Hitachi and Nissan had no obligation to provide evidence in response. See Adickes, 398 U.S. at 160; Clark, 929 F.2d at 608.
 
 V
 
 27
 We conclude that Tower, unlike Fritz, carried its initial burden of production. Hitachi and Nissan claimed that timely notice had been provided to Tower through its agent in Argentina, Laser Cargo, S.A. In support of its motion, Tower provided two affidavits from Linda Zink, its Director of Aircraft Planning. Zink's first affidavit stated, "[I attach] a letter dated March 12, 1997, from plaintiffs' counsel to Tower Air . . . . Tower Air received this letter sometime after March 12, 1997. Prior to receiving this document, Tower Air had never received a notice of claim, written or otherwise, from plaintiffs regarding the alleged damage to the cargo at issue in this case." Zink's second affidavit stated, "At no time has Laser Cargo, S.A., acted as an agent for Tower Air." While it is possible that Hitachi dispatched notice within seven days of June 13, 1995, and that Tower never received such notice, we believe this possibility is sufficiently unlikely that Tower has successfully carried its burden of production. That is, Tower's affidavits, if believed, negate an essential element of plaintiffs' complaint.
 
 
 28
 Because Tower, the moving party, carried its initial burden of production, Hitachi and Nissan, the nonmoving parties, were obliged to produce evidence in response. Hitachi and Nissan produced two affidavits of Ernesto Medel, a Nissan claims adjuster, accompanied by an "inspection certificate" and letters purporting to serve as timely notice. Hitachi and Nissan contend that these documents create a genuine issue of material fact. However, the district court refused to consider them as evidence, ruling that the affidavits were insufficient to show who prepared the documents and when they were dispatched, if indeed they were dispatched at all. We regard it as a close question whether, in ruling on a summary judgment motion, the district court properly refused to consider the inspection certificate and letters. But we find it unnecessary to reach that question. Even assuming that the documents attached to the Medel affidavits could properly have been considered by the district court, we believe they do not create a genuine issue of material fact as to whether Laser Cargo was ever an agent of Tower. We therefore affirm, although on a different basis, the district court's grant of Tower's motion for summary judgment.
 
 
 29
 Summary judgment for Fritz is REVERSED, summary judgment for Tower is AFFIRMED, and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Honorable Susan Oki Mollway, United States District Judge for the District of Hawaii, sitting by designation.
 
 
 [2]
 Article 26 provides:
 (1) Receipt by the person entitled to the delivery of baggage or goods without complaint shall be prima facie evidence that the same have been delivered in good condition and in accordance with the document of transportation.
 (2) In case of damage, the person entitled to delivery must com plain to the carrier forthwith after the discovery of the damage, and, at the latest, within . . . seven days from the date of receipt in the case of goods. In case of delay the complaint must be made at the latest within fourteen days from the date on which the bag gage or goods have been placed at his disposal.
 (3) Every complaint must be made in writing upon the docu ment of transportation or by separate notice in writing dispatched within the times aforesaid.
 (4) Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.
 Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, art. 26, 49 Stat. 3000, 3014, T.S. No. 876 (1934), note following 49 U.S.C. S 40105.
 
 
 [3]
 See, e.g., Samuel Issacharoff & George Loewenstein, Second Thoughts About Summary Judgment, 100 Yale L.J. 73, 81 (1990) ("Celotex represents a retreat from the Adickes standard for summary judgment with regard to the burden of production that would be required of a movant for summary judgment."); Melissa L. Nelken, One Step Forward, Two Steps Back: Summary Judgment after Celotex, 40 Hastings L.J. 53, 65 & n.60 (1988) ("[Celotex] marks a substantial break with precedent regarding the initial burden on a party moving for summary judgment . . . [Celotex and Adickes] cannot be squared in terms of the initial burden placed on the moving party."); John E. Kennedy, Federal Summary Judgment: Reconciling Celotex v. Catrett with Adickes v. Kress and the Evidentiary Problem Under Rule 56, 6 Rev. Litig. 227, 247 (1987) (reconciling Celotex and Adickes as to the moving party's burden is "perverse because it rests upon an interpretation of the Rule rewarding [defendant] Celotex for remaining silent and punishing [defendant] Kress for attempting to satisfy a burden it did not have.").
 
 
 [4]
 See Adam Price, Reconsidering Celotex: What is the Burden of Production When a Defendant Moves for Summary Judgment on the Ground that the Plaintiff Lacks Evidence?, 11 Utah B.J. 14 (May 1998).
 
 
 [5]
 Article 23 of the Warsaw Convention does not allow for a carrier to enforce a stricter notice provision. It states that"[a]ny provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this Convention shall be null and void . . . ." Warsaw Convention, supra note 2, art. 23. Since Fritz's contractual notice provision is stricter than the notice requirement of the Warsaw Convention, it is a "provision tending to relieve [Fritz] of liability," and is therefore "null and void." Id.