Kim ALLEN, Lainie Rideout, and Kathleen Hairston, on behalf of themselves, all others similarly situated, and the general public, Plaintiff,

v.

SIMILASAN CORPORATION, Defendant.

Case No. 12–cv–376 BAS (JLB).

United States District Court, S.D. California.

Signed March 30, 2015.

---

Beatrice Skye Resendes, Ronald Marron, Alexis M. Wood, Law Offices of Ronald A. Marron, Deborah S. Dixon, John P. Fiske, John H. Gomez, Gomez Trial Attorneys, San Diego, CA, for Plaintiff.

Daniel J. Herling, Michelle Gillette, Mina Nasseri, Bridget A. Moorhead, Mintz Levin Cohn Ferris Glovsky and Popeo PC, San Diego, CA, for Defendant.

**ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (2)DENYING PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S SUMMARY JUDGMENT MOTION [ECFs 103, 109]**

CYNTHIA BASHANT, District Judge.

On February 10, 2012, Plaintiff Kim Allen sued Defendant Similasan Corporation, claiming Defendant made misrepresentations on the labels of its homeopathic products. On October 11, 2013, Plaintiffs Kim Allen, Lainie Rideout, and Kathleen Hairston filed the operative Third Amended Complaint ("TAC", ECF 58). Allen was then dismissed with prejudice on December 30, 2013. ECF 69. Six causes of action remain against Defendant: (1) violation of the California Consumers Legal Remedies Act ("CLRA", Cal. Civ.Code §§ 1750 *et seq.*); (2) violation of the California Unfair Competition Law ("UCL", Cal. Bus. & Prof.Code §§ 17200 *et seq.*); (3) violation of the California False Advertising Law ("FAL", Cal. Bus. & Prof.Code §§ 17500 *et seq.*); (4) breach of express warranty; (5) breach of the implied warranty of merchantability; and (6) violation of the Magnuson–Moss Warranty Act ("MMWA", 15 U.S.C. §§ 2301 *et seq.*). ECF 58.

Defendant moved for summary judgment, or alternatively, summary adjudication. Hairston and Rideout ("Plaintiffs") opposed. ECF 116. Defendant filed a Reply in Support. ECF 124. The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion. ECF 103.

### BACKGROUND

Defendant is a Colorado corporation "that produces, markets, and sells homeopathic products throughout the United States[,]" including in California TAC ¶ 10. Defendant sells its products in hundreds of retail stores, including major chains such as Walgreens, Target, CVS, Rite–Aid, and Walmart. *Id.* At issue here are six over-the-counter products: Earache Relief (now called Ear Relief), Nasal Allergy Relief, Sinus Relief, Pink Eye Relief (now called Irritated Eye Relief), Dry Eye Relief, and Allergy Eye Relief (collectively, the "Products"). *Id.* at ¶ 2. Each Product's label bears claims about the respective Product's effectiveness, as well as other assertions, including "Eye Doctor Recommended," "Pharmacist Recommended," and "Preservative Free." *Id.* at 14:15–27 [1],

---

**1.** The paragraphs of Plaintiffs' TAC are misnumbered starting on page 16, resulting in duplicate paragraph numbers. Subsequent citations to the TAC will be to a specific

17:26–18:8, ¶¶ 78, 88, 99, 107. Plaintiffs claim that every Product label bears a "100% Natural Active Ingredients" representation. *Id.* at 14:15–16, 17:26–27, ¶¶ 78, 88, 99, 107.

Plaintiffs purchased Defendant's Products, claiming they did so in reliance on Defendant's labels. TAC ¶¶ 122–123. Rideout states she purchased Nasal Allergy Relief and Sinus Relief each two to three times per year from 2000 to 2010. *Id.* at ¶ 60, 16:22–27. Rideout ceased purchasing Defendant's Products in October 2010 after researching them online, which led her to discover that "the Product[s] did not provide the benefits, characteristics and qualities as advertised[.]" *Id.* at ¶ 62, 17:3–8. Between 2009 and 2010, Hairston claims she purchased Allergy Eye Relief, Earache Relief, Dry Eye Relief, and Pink Eye Relief each at least twice per year. *Id.* at ¶¶ 75, 84, 96, 104. In October 2010, Hairston claims she concluded that the Products did not work for their respective purposes, based on her use of the Products as directed by their labels. *Id.* at ¶¶ 76, 85, 97, 105.

Plaintiffs claim Defendant's Products are "worthless" because they do not work, describing several of the Products as mere "high-priced water." TAC 15:3–17, 18:11–22, ¶¶ 81, 93, 100, 108, 120, 129. Plaintiffs also claim that Products marketed as "Preservative Free" or "100% Natural" are falsely and deceptively labeled because each Product contains artificial preservatives. *Id.* at 15:3–17, 18:11–22, ¶¶ 81, 100, 108; Pls.' Opp'n 1. Additionally, Plaintiffs claim that Earache Relief and Pink Eye Relief are illegal to sell. *Id.* at ¶¶ 91, 110.

### LEGAL STANDARD

Federal courts sitting in diversity "apply state substantive law and federal procedural law." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir.2001) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *George v. Morris,* 736 F.3d 829, 834 (9th Cir.2013). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; see also *FreecycleSunnyvale v. Freecycle Network,* 626 F.3d 509, 514 (9th Cir.2010). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party without the ultimate burden of persuasion at trial can satisfy this burden in two ways: (1) by producing "evidence negating an essential element of the nonmoving party's claim or defense;" or (2) by demonstrating that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.

paragraph unless the paragraph is duplicated elsewhere, in which case citation will be to the page and line numbers.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir.2000); *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; Fed.R.Civ.P. 56(c)(1). Evidence may be offered "to support or dispute a fact" on summary judgment only if it "could be presented in an admissible form at trial." *Fraser v. Goodale,* 342 F.3d 1032, 1036–37 (9th Cir.2003); see also Fed.R.Civ.P. 56(c)(2). However, at the summary judgment stage, the focus is not on the admissibility of the evidence's form, but on the admissibility of its contents. *Id.* If the moving party meets it burden, the burden then shifts to the non-moving party to produce admissible evidence showing a genuine issue of material fact. *Nissan Fire,* 210 F.3d at 1102–03; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[I]n granting summary judgment a district court cannot resolve disputed questions of material fact; rather, that court must view all of the facts in the record in the light most favorable to the non-moving party and rule, as a matter of law, based on those facts." *Albino v. Baca,* 747 F.3d 1162, 1173 (9th Cir.2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment[.]" *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## DISCUSSION

### I. Plaintiffs' Motion to Strike

Plaintiffs moved to strike Defendant's motion for summary judgment (ECF 109) on August 21, 2014, arguing the motion was premature because merits discovery has not yet opened. However, in the January 23, 2014 scheduling Order, the court stated (1) that discovery was open as to all claims and defenses and not limited to class certification issues and (2) the sched-

uling order did not preclude Defendant from seeking summary judgment before the Court ruled on Plaintiffs' class certification motion. Order 2–3, ECF 70. Thus merits discovery has been open, and Plaintiffs were on notice that that Defendant could move for summary judgment prior to Plaintiffs' motion for class certification. The Court therefore **DENIES** Plaintiffs' motion to strike. ECF 109.

### II. Statute of Limitations

#### A. Plaintiffs' Claims Relate Back to the Original Complaint

Defendant argues that all of Rideout's and Hairston's claims are time-barred by the statute of limitations because their claims do not relate back to the original complaint. Def.'s Mot. 7.

 Federal Rule of Civil Procedure 15(c) governs whether an amendment to a pleading relates back. "Rule 15(c) does not deal specifically with whether amendments adding plaintiffs 'relate back' to the date of the original complaint, but the rules regarding adding defendants are applied by analogy." *Corns v. Laborers Int'l Union of N. Am.,* No. 09–CV–4403, 2014 WL 1319363, at *5 (N.D.Cal. March 31, 2014) (citing *Immigrant Assistance Project of L.A. Cnty. Fed'n of Labor (AFL–CIO) v. I.N.S.,* 306 F.3d 842, 857 (9th Cir.2002)). An amendment adding a plaintiff relates back to the date of the original pleading when "(1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; (2) the relation back does not unfairly prejudice the defendant; and (3) there is an identity of interests between the original and newly proposed plaintiff." *Id.* (quoting *In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 935 (9th Cir.1996)) (internal quotation marks omitted).

### i. *Adequate Notice*

"[N]otice must be determined based on the contents of the complaint alone." *Willner v. Manpower Inc.*, No. 11–cv–02846, 2014 WL 2939732, at *4 (N.D.Cal. June 30, 2014) (citing *In re Syntex*, 95 F.3d at 935). Specifically, courts examine whether the original complaint clearly stated that the plaintiff sought to represent others. *See, e.g., Immigrant Assistance Project*, 306 F.3d at 857–858 (finding the notice requirement met where the original complaint was filed "on behalf" of people unlawfully denied access to legalization services); *Corns*, 2014 WL 1319363, at *5 (finding the notice requirement unmet where the original complaint did not give "clear notice" of plaintiff's intent to allege and certify a class). Where "the new plaintiffs had always been a part of the putative class," notice is satisfied "because Defendants had always known that all putative class members were 'potential plaintiffs.'" *Willner*, 2014 WL 2939732, at *5 (quoting *Immigrant Assistance Project*, 306 F.3d at 857–858).

 Allen brought this putative class action seeking injunctive relief against Defendant on behalf of "[a]ll purchasers of [Defendant's] homeopathic products...." Compl. ¶¶ 1, 30. Allen specifically claimed the Products she purchased were ineffective and generally claimed that Defendant's remaining homeopathic Products were "ineffective due to extremely high dilutions, the ineffectiveness of active ingredients in relieving such symptoms, or both." *Id.* at ¶ 28. Therefore the original complaint notified Defendant that Allen intended to represent all purchasers of Defendant's Products and that she claimed the Products were ineffective. Rideout and Hairston fell within the prospective plaintiffs as defined by Allen, and the underlying theory of their case is the same. Therefore the Court finds that the original complaint gave Defendant adequate notice of Rideout's and Hairston's claims.

### ii. *Unfair Prejudice and Identify of Interests*

Again, the basis for Allen's original complaint was that Defendant's homeopathic Products are all ineffective. Compl. ¶¶ 27–28. It follows that Defendant is not prejudiced by the addition of plaintiffs who purchased different Defendant-produced homeopathic Products than Allen because the original complaint challenged all ˙of the Products. The substitution of new plaintiffs forwarding the same theories on the same Products does not prejudice Defendant.

The identity of interests requirement is met if "the circumstances giving rise to the claim remain[ ] the same under the amended complaint as under the original complaint." *Immigrant Assistance Project*, 306 F.3d at 858 (quoting *Raynor Bros. v. Am. Cyanimid Co.*, 695 F.2d 382, 384 (9th Cir.1982)) (alterations and internal quotation marks omitted). Here, Allen's original claims and Plaintiffs' claims are the same: (1) Defendant falsely labeled its homeopathic Products, (2) Plaintiffs purchased the Products in reliance on the labels' misrepresentations, and (3) the Products were ineffective. The claims of Rideout and Hairston thus arise out of the same circumstances giving rise to Allen's original claim, meeting the identity of interests requirement.

Consequently, the Court finds the claims of Rideout and Hairston relate back to the date of the original complaint: February 10, 2012. The Court now proceeds to determine whether the claims of Rideout and Hairston are barred by the statute of limitations.

**B. Some of Rideout's Claims Are Time Barred**

**i. Rideout Was on Inquiry Notice**

■ The UCL's statute of limitations is four years. *RA Med. Sys., Inc. v. Photo-Medex, Inc.,* 373 Fed.Appx. 784, 786 (9th Cir.2010). "[C]laims under the UCL are governed by common law accrual rules, including delayed discovery." *Irving v. Lennar Corp.,* No. 2:12–CV–0290, 2013 WL 4900402, at *10 (E.D.Cal. Sept. 11, 2013) (internal citation and quotation marks omitted). "This rule delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id.* (internal citation and quotation marks omitted).

The MMWA does not expressly provide a statute of limitations. In such cases, federal courts borrow the most analogous state statute of limitations. *Rooney v. Sierra Pac. Windows,* 566 Fed.Appx. 573, 576 (9th Cir.2014) (citing *Hooper v. Lockheed Martin Corp.,* 688 F.3d 1037, 1044 (9th Cir.2012)). An analogous California statute, the Song–Beverly Consumer Warranty Act, provides for a four-year statute of limitations. *Id.* (citing *Mexia v. Rinker Boat Co., Inc.,* 174 Cal.App.4th 1297, 1306, 95 Cal.Rptr.3d 285 (2009)).

The breach of express warranty and breach of implied warranty claims are barred "four years from the date the goods are delivered (regardless of the date the buyer discovers the breach), *unless* the warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance[.]" *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.,* 169 Cal.App.4th 116, 129, 87 Cal.Rptr.3d 5 (2008) (quoting Cal. Com.Code § 2725). Under these limitations periods, Rideout's claims are barred if they accrued prior to February 10, 2008.

The statute of limitations period for CLRA and FAL claims is three years. *Yumul v. Smart Balance, Inc.,* 733 F.Supp.2d 1117, 1130 (C.D.Cal.2010) (internal citations and quotation marks omitted). Under these limitations periods, Rideout's claims are barred if they accrued prior to February 10, 2009.

Rideout claims she purchased the Nasal Allergy Relief and Sinus Relief Products two to three times a year from 2000–2010, "hoping [the Products] would work as advertised." TAC ¶ 60. Rideout, in her deposition on February 21, 2014, was asked about the efficacy of the Nasal Allergy Relief Product:

Q: Only you can tell—right?—whether your allergies were clearing up or not?
A: Right. I didn't feel like my allergies were clearing up, no.
Q: All right. So, when you took it in 2000, you didn't—it's your testimony—and I don't want to put words in your mouth—that your allergy symptoms weren't clearing up?
A: Correct. My allergy symptoms were not clearing up.

Rideout Dep. 39, ECF 103–6.

Based on this testimony, Rideout should have known of the basis for her claim (*i.e.,* that the Allergy Relief Product did not relieve allergies) well before February 2008. Simply put, reasonable people do not buy an ineffective product for years on end "hoping" that it will one day work. Plaintiffs' argument that "the issue is not when Plaintiffs knew the Products may not have been working, but when they first knew or should have been on inquiry notice of the Products' hyper-diluted nature" is unpersuasive. Pls.' Opp'n 8. Once it is patently apparent that a consumer good is unfit for its advertised purpose, a consumer is on inquiry notice that they have a claim against its manufacturer. A simple internet search would have revealed the underlying manufacturing methods common to all homeopathic preparations. Rideout should have been aware of the

Products' alleged ineffectiveness after using them several times with no result, obviating the concern that it was simply a "bad batch," and instead confirming it was an inherent defect.

■ However, under the continuous accrual doctrine, "a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Aryeh*, 55 Cal.4th at 1192, 151 Cal.Rptr.3d 827, 292 P.3d 871 (internal citation omitted). "[C]ontinuous accrual applies whenever there is a continuing or recurring obligation[.]" *Id.* at 1199, 151 Cal.Rptr.3d 827, 292 P.3d 871. Here, Defendant had a continuing statutory obligation to refrain from falsely labelling its Products. *See, e.g.*, Cal. Bus. & Prof.Code §§ 17500 *et seq.* While it may have been prudent for Rideout to cease purchasing a product she believed to be ineffective, she nevertheless continued to do so. Because the causes of action in this litigation rely on objective tests for reliance, her subjective unreasonableness is irrelevant and does not bar her claims. Therefore her purchases of Defendant's Products within the statutory period are not barred.

■ Plaintiffs attempt to invoke other tolling doctrines, none of which apply in this case. Plaintiffs first invoke the delayed discovery exception. Pls.' Opp'n 9. This rule delays the accrual of a claim until the plaintiff discovers or should have discovered the facts giving rise to the claim. *Wells v. Sorin Grp. USA, Inc.*, No. 2:14–cv–00606, 2014 WL 4926268, at *4 (E.D.Cal. Sept. 30, 2014) (internal citation omitted). "In order to invoke the delayed discovery exception to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable

diligence." *Yumul*, 733 F.Supp.2d at 1130 (internal citations and quotation marks omitted).

■ On the question of reasonable diligence, Rideout claims that she was unable to have made earlier discovery of her claims because she is a layperson and because Defendant solely possessed the information regarding the advertising's falseness. TAC ¶ 63. She states she only learned of her claims after conducting internet research in 2010. *Id.* at ¶ 62, 17:3–8. She does not explain why being a layperson in 2000 prevented her from doing the same research in 2010, which was not prompted by any special occurrence; rather, the 2010 research was conducted because the Products were purportedly not working, which Rideout claims was the case in 2000. *Id.* at ¶ 60, 16:22–27. Rideout's delay is unreasonable, and she has thus failed to show reasonable diligence. This doctrine does not toll the statute of limitations for her claims.

■ Plaintiffs next argue that the statute of limitations is tolled due to Defendant's fraudulent concealment. Pls.' Opp'n 9–10. "The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal.4th 1185, 1192, 151 Cal.Rptr.3d 827, 292 P.3d 871 (Cal.2013) (internal citation omitted). This doctrine requires the plaintiff (1) plead with particularity the facts giving rise to the fraudulent concealment claim and (2) demonstrate that the he or she used due diligence in an attempt to uncover the facts. *Hunter v. Gates*, 68 Fed.Appx. 69, 71 (9th Cir.2003) (internal citation omitted). For the same reasoning just discussed, Rideout has failed to show that she used due diligence. This tolling doctrine thus does not apply.

Plaintiffs also seek to invoke the equitable tolling doctrine. Pls.' Opp'n 10–11. This doctrine "suspend[s] or extend[s] the statute of limitations when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies and the statute of limitations' notice function has been served." *Aryeh*, 55 Cal.4th at 1192, 151 Cal.Rptr.3d 827, 292 P.3d 871 (internal citation omitted). Plaintiffs point to a CLRA requirement, under which plaintiffs must send a notice to the defendant and allow the defendant thirty days to remedy its advertising. Pls.' Opp'n 10–11. Rideout sent her letter on March 29, 2012. *Id.* Plaintiffs' argument is unpersuasive for two reasons: (1) the notice letter was a prerequisite to bringing her claim in *this* action, and thus it may be considered the same remedy; and (2) even assuming the letter is an alternate remedy, the letter was sent far past the expiration of the four-year period for Rideout's UCL, MMWA, and breach of warranty claims, which accrued in 2000. Accordingly, this doctrine does not apply.

To the extent Rideout brings her UCL, MMWA, and breach of express and implied warranty claims for purchases made prior to February 10, 2008, those claims are **DISMISSED**. To the extent Rideout brings her CLRA and FAL claims for purchases made prior to February 10, 2009, those claims are **DISMISSED**. As discussed in the Court's class certification Order, the class must also be limited to those who made purchases on or after February 10, 2008.

Because all of Hairston's claims accrued after her purchases, which began in April 2009, they fall within three years of the original complaint. Therefore none of Hairston's claims are barred by the statutes of limitations.

### III. Defendant's Motion to Strike the Expert Report of Dr. Rose

Defendant moves to strike the expert report of Dr. Rose, arguing the report does not satisfy the requirements of Federal Rule of Civil Procedure 702. Def.'s Mot. 21–25. Plaintiffs submitted the report to rebut Defendant's expert, Tony Bark, M.D., who offered an opinion on the effectiveness of Defendant's Products. FRCP 702 provides that an expert witness' opinion is admissible if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principals and methods; and

(d) the expert has reliably applied the principals and methods to the facts of the case.

Dr. Rose's report discusses the theory behind homeopathic remedies, literature that suggests homeopathy is ineffective, and methodological problems with studies that have purportedly found homeopathic remedies to be effective. Rose Decl. ¶¶ 5–13, ECF 103–5. Based on the foregoing, Dr. Rose gives his opinion that Defendant's homeopathic Products are unlikely to be effective. *Id.* at ¶ 14. In light of Plaintiffs' allegations and testimony that the Products are ineffective, Dr. Rose's report relates directly to their theory of liability. Since Dr. Rose's report is based on literature both supportive and skeptical of homeopathy's effectiveness, Dr. Rose's report is based on sufficient data and is the product of reliable principals and methods.

As for Rule 702's fourth requirement, Dr. Rose states that because Defendant's

Products are labeled "homeopathic," it is his opinion that the Products are unlikely to be effective beyond a placebo effect. Rose Decl. ¶ 14. Defendant argues that Dr. Rose's testimony must be excluded because it is directed at homeopathy generally and not specifically at Defendant's Products. Def.'s Mot. 23. However, based on Dr. Rose's discussion of the relevant literature and theory of homeopathy in general, his opinion as to Defendant's Products is logical, and an examination of Defendant's homeopathic Products would be unnecessary. Consequently, Dr. Rose's report is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (explaining that it is the trial court's duty to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.") The Court therefore **DENIES** Defendant's motion to strike the expert report of Noel R. Rose, M.D.

## IV. Standing

▮ Defendant groups nearly all of its remaining arguments under a general heading asserting that Plaintiffs lack statutory standing. Defendant first argues that Plaintiffs' UCL claims fail because Plaintiffs cannot establish reliance. Def.'s Mot. 12. Even if this is true, reliance is not a material element of a UCL claim. *In re Tobacco II Cases,* 46 Cal.4th 298, 320, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009).

Defendant then argues Plaintiffs have not produced any evidence that Defendant's Products are falsely labeled or ineffective, and that Plaintiffs' claim that homeopathy is generally ineffective is not sufficient to meet that burden. Def.'s Mot.

12–14. Defendant principally relies on *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.,* 107 Cal.App.4th 1336, 133 Cal.Rptr.2d 207 (2003). In *King Bio,* the court refused to shift the burden of proof between the parties; that is, it refused to make plaintiff's burden of proving the products' ineffectiveness into the defendant's burden of proving the products' effectiveness. *Id.* at 1347, 133 Cal. Rptr.2d 207. At trial, the plaintiff presented evidence that homeopathy was generally ineffective, and that the defendant's homeopathic products were labeled as effective. *Id.* at 1347, 133 Cal.Rptr.2d 207. At the close of plaintiff's case-in-chief, the defendant successfully moved for judgment in its favor. *Id.* at 1340, 133 Cal. Rptr.2d 207.

*King Bio* is distinguishable on procedural grounds. There, the proceedings had advanced to trial and plaintiff had presented all of its evidence. Here, as discussed above, discovery is still open.[2] Moreover, as quoted by Defendant in its motion, "[t]he falsity of the advertising claims may be established by testing, scientific literature, or anecdotal evidence." *King Bio,* 107 Cal.App.4th at 1348, 133 Cal.Rptr.2d 207. Dr. Rose's opinion that Defendant's Products are unlikely to be effective beyond the placebo effect is based on literature and research. Rose Decl. 6–7. Rideout testified that Nasal Allergy Relief did not work for a period of ten years. Rideout Dep. 39. This evidence lends support to Plaintiffs' false advertising claims. Under these circumstances, Defendant has not carried its burden of demonstrating the absence of a genuine issue of material fact.

---

**2.** The January 23, 2014 scheduling order clearly states that discovery was open, but the Court recognizes there was some room for confusion on this matter. The scheduling order provided cutoff dates for expert and class certification issues, but not merits discovery. Order 1–2, ECF 70. The amended scheduling orders dated March 24, 2014 and May 9, 2014 also only provided cutoff dates for expert and class certifications issues. ECFs 84, 94.

## A. Rideout's Claims

Defendant challenges Rideout's claims about representations other than those relating to the Products' effectiveness. These include "Eye Doctor Recommended," "Preservative Free," and "100% Natural." However, there is no evidence that these statements caused Rideout to purchase the Products or were otherwise material to her decision to purchase them. Instead, Rideout states she believed this action was "as far as I know, not in dispute if [the Products are] natural but in dispute of their effectiveness." Rideout Dep. 75. Because these misrepresentations are immaterial, they are inactionable.[3] Accordingly, the Court **GRANTS** summary judgment and **DISMISSES** all allegations relating to "Eye Doctor Recommended," "Preservative Free," and "100% Natural."

## B. Hairston's Claims

Defendant attacks Hairston's standing to pursue her claims because she testified that she relied on representations that were not on the Products when she purchased them. Def.'s Mot. 16. However, as previously noted, reliance is unnecessary to prevail at trial on these causes of action. Further, Defendant only attacks the ancillary representations on the package, which the Court has already determined are immaterial. As such, her failure to recollect their content is also immaterial and will not defeat her claims on summary judgment.

Defendant also argues that Hairston lacks standing because she expected unadvertised results from the Products, relying on her deposition testimony. Def.'s Mot. 17–18. A reasonable consumer's understanding of the Products' representations is a question of fact currently in dispute. Because there is a dispute as to these material facts, summary judgment on this basis would be inappropriate.

## C. Injunctive Relief

■ Defendant argues that Plaintiffs have failed to sufficiently demonstrate a threat of future injury. Def.'s Mot. 18–19. "For the purposes of requesting injunctive relief, a party does not have standing unless it is able to show a real or immediate threat that it will be wronged again." *Hightower v. City and Cnty. of S.F.,* 77 F.Supp.3d 867, 886, No. C–12–5841, 2014 WL 7336677, at *14 (N.D.Cal. Dec. 24, 2014) (quoting *City of L.A. v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)) (internal quotation marks and alteration omitted). In dismissing the SAC's injunctive relief claim and granting leave to amend, the magistrate judge noted that it was "highly unlikely" Plaintiffs would purchase these ineffective Products again, and that they were "unlikely to be overcome by a cacophony of falsehood and deceit as they walk the aisles of their local drug store." Order 4, ECF 57.

Plaintiffs amended the TAC to state that Rideout would purchase the Products again in the future if they were effective as advertised. TAC ¶ 61, 17:1–2. Additionally, Rideout testified during deposition that she would "consider" buying Defendant's Products again in the future. Marron Decl., Ex. 5, 66, ECF 119. Plaintiffs base their claims for injunctive relief on these statements. They are insufficient for two reasons: (1) the conclusory statements in the TAC lack a factual basis and actually undermine Plaintiffs' theory that homeopathic remedies can never be effective and

---

**3.** Further, Plaintiffs' experts failed to opine on the impact these false statements may have on the true market value of the Product. *See* Class Cert. Order 4–7, ECF 143. Lastly, the Court fails to see, based on the current record, how these statements are misleading or false.

(2) Rideout's statement that she would "consider" purchasing the Products in the future falls short of a "real" and "immediate" threat. The Court therefore **DISMISSES** Plaintiffs' prayer for injunctive relief.[4]

## V. Plaintiffs' Warranty and MMWA Claims [5]

### A. Breach of Implied Warranty of Merchantability

■■■ Defendant argues that Plaintiffs lack vertical privity with Defendant, a requirement for a breach of implied warranty claim. Def.'s Mot. 20. Both the California Commercial Code and California's Song–Beverly Act contain separate causes of action for breach of the implied warranty of merchantability. "While the Song–Beverly Act is similar to the California Commercial Code, the Song–Beverly Act was intended to provide greater protections and remedies for consumers than the Commercial Code." *Ehrlich v. BMW of N. Am., LLC*, 801 F.Supp.2d 908, 921 (C.D.Cal.2010) (internal citation and quotation marks omitted). California Commercial Code § 2314 requires vertical privity for an implied warranty of merchantability claim. *Id.* The privity requirement is not required for an implied warranty of merchantability claim brought under California's Song–Beverly Act. *Id.*

Plaintiffs argue they brought their breach of implied warranty claim under the Song–Beverly Act, and thus they do not have to establish vertical privity. Pls.' Opp'n 22. They argue that though the TAC does not state "section 1792" or "Song–Beverly Act," the language used in the Fifth Cause of Action mirrors that of section 1792. *Id.* The language also resembles that of the Commercial Code. *Compare* TAC ¶ 100 ("Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiffs and the Class, and there was in the sale to Plaintiffs and other consumers an implied warranty that those goods were merchantable."), *with* Cal. Com.Code § 2314 ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."). However, construing the pleadings in Plaintiffs' favor, Plaintiffs have stated a claim under the Song–Beverly Act, and they need not establish vertical privity.

### B. MMWA

■■■ Defendant argues that Plaintiffs' MMWA claim fails because (1) the labels are not "written warranties," and (2) the MMWA claim is based exclusively on allegations that Defendant violated an implied warranty and Plaintiffs cannot establish the elements of breach of implied warranty. Def.'s Mot. 20–21. "For limited written warranties and implied warranties, the MMWA provides a federal cause of action for state warranty claims." *Stearns v. Select Comfort Retail Corp.*, No. 08–2746, 2009 WL 1635931, at *9 (N.D.Cal.2009) (internal citation omitted). "However, [the MMWA] does not expand the rights under those claims, and dismissal of the state law claims requires the same disposition with respect to an associated MMWA claim." *Id.* (internal citations omitted).

---

**4.** Because it has not been briefed, the Court declines to consider whether Plaintiffs bring injunctive relief claims on behalf of the class in spite of Plaintiffs' inability to personally do so.

**5.** With little analysis, Defendant attacks Plaintiffs' breach of express warranty claim on the ground that Plaintiffs have not produced enough evidence to meet its burden. Def.'s Mot. 19. For reasons discussed in Section (D)(2) of this order, the Court rejects Defendant's argument.

Since the MMWA is not limited to written warranties, Defendant's first argument fails. As discussed in Section E(1) of this order, Defendant has not shown that Plaintiffs' breach of implied warranty claim must fail. Since the state law claims stand, Defendant's second argument fails as well. Accordingly, the Court **DENIES** Defendant's motion to dismiss these claims.

### CONCLUSION & ORDER

In light of the foregoing, the Court holds as follows:

1. Plaintiffs' motion to strike Defendant's motion for summary judgment (ECF 109) is **DENIED;**

2. Rideout's UCL, MMWA, and breach of express and implied warranty claims stemming from purchases of Defendant's Products prior to February 10, 2008 are **DISMISSED;**

3. Rideout's CLRA and FAL claims stemming from purchases of Defendant's Products prior to February 10, 2009 are **DISMISSED;**

4. Defendant's motion to strike the expert report of Noel R. Rose, M.D. is **DENIED;**

5. Plaintiffs' prayer for injunctive relief is **DISMISSED;** and

6. Defendant's motion for summary judgment is otherwise **DENIED.**

**IT IS SO ORDERED.**